### FRANK MOODY v. THE STATE.

#### No. 4081.   Decided June 21, 1916.

**1.—Assault to Murder—Continuance—Diligence—Materiality of Testimony.**

Where, upon motion for new trial, after conviction of assault to murder, it appeared that defendant had filed his first application for a continuance on account of the absence of a witness, and by the affidavit of said witness, it appeared that one of the prosecuting witnesses began to draw a pistol when defendant drew his pistol and fired, and this was a controverted question on the trial of the case, and it also appeared from the record that the defendant had used due diligence to procure the attendance of said witness, a refusal to grant a new trial was reversible error.

**2.—Same—Misconduct of Jury—Newly Discovered Evidence—Practice on Appeal.**

Where the judgment is reversed and the cause remanded for other reasons, it is unnecessary to discuss the alleged misconduct of the jury or newly discovered testimony.

Appeal from the District Court of Rusk.   Tried below before the Hon. W. C. Buford.

Appeal from a conviction of an assault to murder; penalty, four years imprisonment in the penitentiary.

The opinion states the case.

*Futch & Tipps,* for appellant.—On question of continuance: Taylor v. State, 164 S. W. Rep., 844.

*C. C. McDonald,* Assistant Attorney General, for the State.

HARPER, JUDGE.—Appellant was convicted of assault to murder, and his punishment assessed at four years confinement in the penitentiary.

Appellant moved to continue the case, this being his first application, on account of the absence of several witnesses.   The witnesses had been subpoenaed, and when his application for a continuance was overruled, he asked for and was granted an attachment to secure the attendance of the witnesses.   The attendance of Roxie Renfro was not obtained.

The return of the sheriff shows that he found the witness at her home, but she was too sick to be brought to court. On the motion for a new trial it was shown that she was still too sick to attend court, but her affidavit as to what she would testify was obtained and attached to the motion for a new trial. Under the evidence adduced on the trial her affidavit would show her testimony to be most material.

The injured party testified to a difficulty occurring on Saturday night between appellant and himself and his brother. The details or the merits of this Saturday night difficulty need not be gone into further than to state that if the State's theory of the difficulty is true, it would furnish a motive for appellant to commit the crime alleged. On the other hand, if appellant's theory of it was believed, it would furnish ground to believe that perhaps his contention as to the Sunday difficulty might be correct. As to the difficulty on Sunday morning, the prosecuting witnesses Julius Griffin and Jesse Lewis testified they had gone to Pinehill church, and while waiting for services to begin they left the church building and had gone out near the road, and were standing there talking; they heard a saddle screak and a horse's feet; as they turned appellant rode up and said, "G——d d——n you, I have come to kill you," and pulled his pistol; that as appellant did this Julius Griffin started to run, when appellant shot him in the shoulder.

Appellant testified in his own behalf, and said that on account of the Saturday night difficulty he carried a pistol in his coat pocket to protect himself if he was again assaulted. That as he rode up to the church he saw two men standing near the road; that when he got near they turned around and he saw it was Julius Griffin and Jesse Lewis; that Julius Griffin placed his hand in his pocket and began to draw a pistol; that he, appellant, then grabbed his pistol and drew it, and as he did Julius Griffin "ducked" and he fired; he then wheeled his horse and ran.

As to whether or not Julius Griffin had a pistol on this occasion was a hotly contested issue on the trial, but none of the witnesses who testified for appellant claimed to have seen the difficulty, but testified to seeing Julius Griffin with a pistol immediately after the shot was fired. He had no witness present who claimed to see the difficulty, and the State had no other witnesses present who claimed to have seen the difficulty other than Julius Griffin and Jesse Lewis and appellant's father, who claimed to have seen it from the church, and testified in the main as did Julius Griffin and Jesse Lewis. On the motion for a new trial it was shown by the affidavit of Roxie Renfro that had she been able to attend court she would have testified as follows, being in question and answer form: "Q. What is your name? A. Roxie Renfro. Q. Where were you when Frank shot Julius Griffin? A. In the schoolhouse. Q. Where were Frank and Julius? A. Julius and Jesse Lewis were sitting by a pine tree. Q. Where was Frank? A. Frank was coming up the road on horseback. Q. What taken place when Frank rode up? A. Julius got up and started toward Frank,

pulling out his pistol as he went.   Q.   What did Frank do then?   A. Frank pulled his pistol and fired.   Q.   Was Frank still on his horse? A.   Yes.   Q.   Did you see Frank's pistol before he fired?   A.   No. Q.   Did you see Julius with a pistol when Frank rode up?   A.   Yes. Q.   What kind of pistol did Julius have?   A.   A white or pearl-handle pistol."

This is all the affidavit material to the question under discussion, and by it it is seen that her testimony would be corroborative of the testimony of appellant that the prosecuting witness had a pistol on that occasion, drew it first and was advancing on appellant when appellant shot.   Under the circumstances we think the court erred in not granting a new trial when the absent witness swears she would so testify had she been able to attend court, and it is shown that her attendance can be secured on another trial.

Being of this opinion it is unnecessary to discuss the alleged misconduct of the jury, the alleged newly discovered testimony, or the other questions presented, as they will not arise on another trial.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*